[Cite as *State v. Brown*, 2024-Ohio-4450.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

STATE OF OHIO,                                           :

    Appellee,                                       :            CASE NOS. CA2023-09-010
                                                CA2023-09-011
                                                :

  - vs -                                                :            O P I N I O N
                                                  :            9/9/2024

KAYLA RAE BROWN,                                         :

    Appellant.                                      :

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case Nos. 23CR14053 and 23CR14153

Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Colin P. Cochran, for appellant.

**HENDRICKSON, J.**

{¶ 1}   Appellant, Kayla Rae Brown, appeals from the sentence imposed by the Preble County Court of Common Pleas following her guilty pleas to falsification, cruelty to companion animals, menacing by stalking, identify fraud, and telecommunications harassment.

{¶ 2}   On February 6, 2023, in Case No. 23CR14053, Brown was indicted on one count of falsification in violation of R.C. 2921.13(A)(1), a misdemeanor of the first degree,

one count of cruelty to companion animals in violation of R.C. 959.131(D)(2), a misdemeanor of the second degree, one count of cruelty to companion animals in violation of R.C. 959.131(B), a misdemeanor of the first degree, and one count of cruelty to companion animals in violation of R.C. 959.131(C), a felony of the fifth degree. The charges arose following an incident that occurred on or about December 29, 2022. Brown, who runs a self-styled animal rescue operation in Preble County, abandoned a 22-week-old beagle puppy inside a small dog carrier in a ditch on the side of the road. A motorist found the puppy, which was dehydrated, suffered from ulcers, abrasions, fecal contamination, and was extremely emancipated. When Brown was confronted about the puppy she abandoned, she lied to law enforcement about the puppy's whereabouts, claiming the puppy had died and was buried on a friend's property. She stated that a previous online post she made about the puppy being up for adoption actually featured the "identical twin sibling" of the puppy found abandoned on the side of the road. She then falsely claimed that another individual, David Hale, had hacked her social media and posted about the abandoned puppy being up for adoption.

{¶ 3} On July 18, 2023, in Case No. 23CR14153, the state filed a bill of information charging Brown with one count of menacing by stalking in violation of R.C. 2903.211(A)(2)(a), a felony of the fourth degree, four counts of identity fraud in violation of R.C. 2913.49(B)(1), felonies of the fifth degree, four counts of telecommunications fraud in violation of R.C. 2917.21(B)(1), misdemeanors of the first degree, and one count of falsification in violation or R.C. 2921.13(A)(2), a misdemeanor of the first degree. The charges arose from Brown's conduct between June 15, 2021 to February 1, 2023, after David Hale ended a friendship he had with Brown. Brown, angry at Hale, attempted to frame Hale for crimes he did not commit. For nearly two years, Brown, pretending to be

Hale, sent thousands of false messages via Facebook messenger and text messages to herself and her friends and family members. In these messages, Brown—posing as Hale—threatened death to the recipients, savage sexual attacks, attacks on the recipients' children, and threats that he was surveilling the victims' homes. Brown sent the messages (1) to inspire her friends and family members to file police reports against Hale in hope that he would be criminally prosecuted, (2) as a way of endangering Hale's safety due to the threat of vigilante justice, and (3) to secure attention and sympathy for herself as she played the victim. The recipients of the messages filed multiple police reports, which resulted in the issuance of dozens of warrants to ISP providers, telephone companies, and email hosts. Following an investigation, officers discovered that the messages had been sent by Brown from various fake profiles she had created while pretending to be Hale.

{¶ 4} On July 19, 2023, following plea negotiations, Brown appeared before the court to enter a plea in both cases. Brown agreed to plead guilty to all ten counts in Case No. 23CR14153 and to plead guilty to falsification, a first-degree misdemeanor, and cruelty to companion animals, a fifth-degree felony, in Case No. 23CR14053 in exchange for the other two counts of cruelty to companion animals being dismissed and the state agreeing to recommend that the sentences imposed in the two cases be served concurrently. Following a Crim.R. 11(C) plea colloquy, the trial court accepted Brown's guilty pleas and found her guilty. The court ordered a presentence-investigative report (PSI) and scheduled sentencing for August 30, 2023.

{¶ 5} At the sentencing hearing, the trial court indicated it had reviewed the PSI, sentencing memoranda prepared by Brown's counsel and the state, the more than 25 letters submitted on behalf of the victims, and five sets of medical and psychological

records relating to Brown. The court then heard from defense counsel, Brown, and the state. Defense counsel noted that Brown suffers from severe mental health issues and past trauma. After Brown's mother died, Brown stopped taking her medication, did not attend counseling, and "went off the rails." Counsel indicated that Brown understood her behavior was wrong, she was remorseful for her conduct, and she has taken steps to get her mental health issues under control, including engaging in therapy and taking her medication. Counsel noted that Brown was compliant with the terms of her pretrial release and had "almost no criminal history," other than a misdemeanor falsification conviction and a loud music citation. Counsel requested that the court impose a community control sanction on Brown.

{¶ 6} Brown then addressed the court, choosing to read a letter she had prepared. Brown apologized to Hale and her friends for the trouble she caused. She indicated she took "full responsibility for [her] actions and [she] know[s] that there is no excuse for how [she] acted and what [she] did." She discussed how her mental health contributed to her actions and indicated she is "now getting [the] mental health treatment that [she] desperately need[s]."

{¶ 7} The state recommended the court impose an 18-month prison term on Brown and, pursuant to the plea agreement, recommended concurrent sentences be imposed. The state read into the record a letter prepared by Hale's daughter. In the letter, Hale's daughter discussed the mental toll that Brown's behavior had on Hale and his family, noting that Brown's behavior caused Hale to become "someone that is scared, stressed, unhappy, [and] looking over his shoulders all the time." Brown caused Hale's daughter to be "scared, [have] anxiety, trouble sleeping, stress and so much more." Hale's daughter noted that Brown's messages and posts to others caused Hale and his

daughter to feel unsafe and forced them to stay home, where "we still had cops coming to our door with another false report." Hale's daughter asked that Brown be "jailed for all the lies and things she did to everyone else."

{¶ 8} After considering the foregoing, the trial court sentenced Brown in Case No. 23CR14053 to 6 months in prison for falsification and 12 months in prison for cruelty to animals, with the sentences running concurrently to one another. In Case No. 23CR14153, the trial court sentenced Brown to 18 months in prison for menacing by stalking, 12 months on each of the four counts of identity fraud, six months on each of the four counts of telecommunications fraud, and six months for falsification. The sentences in Case No. 23CR14153 were run concurrently to one another but run consecutively to the 12-month sentence in Case No. 23CR14053, for an aggregate prison sentence of 30 months.

{¶ 9} Brown appealed her sentence, raising the following as her sole assignment of error:

{¶ 10} THE TRIAL COURT ERRED BY FAILING TO MAKE THE REQUIRED FINDINGS UNDER R.C. 2929.14(C)(4) PRIOR TO IMPOSING CONSECUTIVE SENTENCES.

{¶ 11} Brown argues the trial court erred in imposing consecutive sentences as the court failed to make the necessary consecutive sentence findings at the sentencing hearing and failed to set forth the findings in the sentencing entry.

{¶ 12} A felony sentence is reviewed under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) states that an appellate court may modify or vacate a sentence if the court finds "by clear and convincing evidence that the record does not support the trial court's findings under

relevant statutes or that the sentence is otherwise contrary to law." *Id*.

{¶ 13} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, syllabus. Specifically, the sentencing court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 14} Though a trial court must make the required findings at the sentencing hearing, "a word-for-word recitation of the language of the statute is not required." *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 15} In the present case, the trial court stated the following in imposing consecutive sentences:

> All of the sentences imposed in [Case No.] 14153 will be conser—will be served concurrently with one another and consecutive to the sentence imposed in [Case No.] 14053.
>
> I appreciate the mental health issues that have been identified, but I'm—any sentence less than this, in my judgment, would demean the seriousness of the offense. I just kept thinking of the phrase, "a reign of terror," that Ms. Brown created for her victims in this case.
>
> And as I said, just repeating myself, to do—to impose any lesser sentence would, in my opinion, demean the seriousness of the offense and the impact that it had on the victims in this case.

The trial court did not set forth any of the consecutive sentencing findings in Brown's sentencing entry.

{¶ 16} We find that the trial court failed to make the requisite R.C. 2929.14(C)(4) findings at the sentencing hearing before sentencing Brown to consecutive sentences. Ohio law requires that the findings be made at the sentencing hearing as well as in the sentencing entry. *Bonnell*, 2014-Ohio-3177 at ¶ 37; *State v. Ward*, 2024-Ohio-2858, ¶ 18 (12th Dist.). Even if we were to accept the trial court's comments above as satisfying some of the R.C. 2929.14(C)(4) findings, such as the proportionality finding and the need to punish the offender, the trial court's statements fail to address the third requirement of R.C. 2929.14(C)(4)—that a finding be made pursuant to subsection (C)(4)(a), (b), or (c)—or address whether consecutive sentences are necessary to protect the public from future crime. *See, e.g., State v. Halbert*, 2023-Ohio-4471, ¶ 36-37 (12th Dist.) (recognizing that R.C. 2929.14[C][4]'s proportionality and criminal history findings are distinct and an appellate court may not assume that one finding satisfies the other).

{¶ 17} Brown's sole assignment of error is sustained. We reverse that portion of the trial court's judgment imposing consecutive sentences and remand the matter to the trial court for resentencing. On remand, the trial court shall consider whether consecutive

sentences are appropriate under R.C. 2929.14(C)(4), and if so, make the required statutory findings on the record at resentencing and incorporate its findings into a sentencing entry. *State v. Gable*, 2024-Ohio-293, ¶ 16 (12th Dist.); *State v. Smith*, 2015-Ohio-1093, ¶ 16 (12th Dist.).

{¶ 18} Judgment reversed and the matter is remanded for the limited purpose of resentencing.

S. POWELL, P.J., and PIPER, J., concur.